IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA


DONALD BURRIS, JR.,

      *Plaintiff*


      *v.*                                        Docket No.:


BOROUGH OF HOMESTEAD, a Municipal
Corporation; CITY OF PITTSBURGH, a Municipal
Corporation; CITY OF PITTSBURGH
BUREAU OF POLICE, a governmental
entity; BOROUGH OF HOMESTEAD POLICE
DEPARTMENT; a governmental entity;
IAN STRANG, individually and
in his official capacities as a Police Officer of the
Borough of Homestead; JAMES ILGENFRITZ,
individually and in his official capacities as a Police
Officer of the Borough of Homestead; LOUIS
SCHWEITZER, individually and in his official
capacities as a Police Officer of the City of Pittsburgh;
STEPHEN MATAKOVICH, individually and in his
official  capacities as a Police Officer of the City
of Pittsburgh, CALVIN KENNEDY, individually and in
his official capacities as a Police Officer for the City of
Pittsburgh: THOMAS GORECKI, individually and in
his official capacity as a Police Officer of the City of
Pittsburgh;  IGOR BOYKO, individually and in his official
capacity as a Police Officer of the City of Pittsburgh;
NATHAN HARPER, in his official capacity as a Chief of
the City of Pittsburgh; JEFFREY DeSIMONE, in his
official capacity as the Chief of Police of the Borough of
Homestead.

      *Defendants.*


JURY TRIAL DEMANDED AS TO ALL CLAIMS AND COUNTS

COMPLAINT

Plaintiff Donald Burris, Jr., makes the following representations to this Court against the named Defendants as follows:

PARTIES

1.      Plaintiff Donald Burris, Jr.  is an adult individual who, at all times relevant hereto, resided 309 Sixth Street, Carnegie, County of Allegheny, Pennsylvania 15106.

2.      Defendant, City of Pittsburgh, (hereinafter referred to as "City") is a municipal corporation within the Commonwealth of Pennsylvania, with administrative offices located at 414 Grant Street, 5th Floor, Room 512, Allegheny County, Pennsylvania, 15219.

3.      Defendant Borough of Homestead (hereinafter "Homestead") is a municipal corporation within the Commonwealth of Pennsylvania with administrative offices located at 221 East 7th Avenue, Homestead, Allegheny County, Pennsylvania 15120.

4.      Defendant City of Pittsburgh Bureau of Police is a governmental entity which is organized and exists under the laws of the Commonwealth of Pennsylvania, having its principal office located at 1203 Western Avenue Pittsburgh Pennsylvania 15233.  Its police officers have jurisdiction on and adjacent in Allegheny County. The Police Officers of such agency have various policies and procedures that govern, among other areas, the use of force deployed by various weapons including a firearm for use in the execution of their duties.

5.      Defendant Borough of Homestead Police Department is a governmental entity which is organized and exists under the laws of the Commonwealth of Pennsylvania, having its principal office located at 221 East 7th Avenue, Homestead, Pennsylvania 15120.  Its police officers have jurisdiction in the Borough of Homestead.  The Police Officers of such agency

have various policies and procedures that govern, among other areas, the use of force deployed by various weapons including a firearm for use in the execution of their duties.

5.      Defendant, Ian Strang, (hereinafter "Strang"), is an adult individual residing in the Western District of Pennsylvania and was a police officer for the Borough of Homestead Police Department, acting under color of state law or custom or usage at all times material to this Complaint.

6.      Defendant, James Ilgenfritz, (hereinafter "Ilgenfritz"), is an adult individual residing in the Western District of Pennsylvania and was a police officer for the Borough of Homestead Police Department, acting under color of state law or  custom or usage at all times material to this Complaint.

7.      Defendant, Louis Schweitzer, (hereinafter "Schweitzer"), is an adult individual residing in the Western District of Pennsylvania and was a police officer for the Borough of Homestead Police Department, acting under color of state law or custom or usage at all times material to this Complaint.

8.      Defendant, Stephen Matakovich, (hereinafter "Matakovich"), is an adult individual residing in the Western District of Pennsylvania and was a police officer for the City of Pittsburgh Police Department acting under color of state law or custom or usage at all times material to this Complaint.

9.      Defendant, Calvin Kennedy, (hereinafter "Kennedy"), is an adult individual residing in the Western District of Pennsylvania and was a police officer for the City of Pittsburgh Police Department acting under color of state law or custom or usage at all times material to this Complaint.

10.     Defendant, Thomas Gorecki, (hereinafter "Gorecki"), is an adult individual

residing in the Western District of Pennsylvania and was a police officer for the City of Pittsburgh Police Department acting under color of state law or custom or usage at all times material to this Complaint.

11.     Defendant, Igor Boyko, (hereinafter "Boyko"), is an adult individual residing in the Western District of Pennsylvania and was a police officer for the City of Pittsburgh Police Department acting under color of state law or custom or usage at all times material to this Complaint.

12.     Defendant, Nathan Harper, (hereinafter "Harper"), is an individual who held the position of Chief of the City of Pittsburgh Police Department. During the time in question, when he was Chief of Police, he was involved in the formulation of policy, procedures, and guidelines for the officers of the City of Pittsburgh Police Department. In such capacity as Chief of Police, he was charged with the supervision, direction, and control of the Officers of the City of Pittsburg traffic stops, use of force, and the use of deadly force. He was also in charge of precluding the use of racial profiling to effectuate arrests and traffic stops.

13.     Defendant, Jeffrey DeSimone, an individual, is the Chief of the Borough of Homestead Police. During the time in question, he was involved in the formulation of policy, procedures, and guidelines for the officers of the Borough of Homestead Police Department. In such capacity as Chief of Police, he was charged with the supervision, direction, and control of the Officers of the Borough of Homestead traffic stops, use of force, and the use of deadly force, and motor vehicle pursuits. He was also in charge of precluding the use of racial profiling to effectuate arrests and traffic stops.

JURISDICTION

14.     This cause of action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this court under the provisions of Title 28 of the United States Code, Sections 1331, 1334 and 1367 (a).  Plaintiff raises claims under the Fourth and Fourteenth Amendments of the United States Constitution and pendant state claims under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §8541 et.seq.

FACTS COMMON TO ALL COUNTS

15.     The City of Pittsburgh is a governmental entity organized and existing under the laws of the Commonwealth of Pennsylvania. In turn, the City of Pittsburgh is responsible for the development, operation, and supervision of the policing powers.

16.     The City of Pittsburgh Bureau of Police is responsible for setting policy, procedures and directives for the operation of its Police Officers and to ensure that policies, procedures and directives established are enforced for the exercise of their police duties; and, are responsible for the development and implementation of policies and procedures concerning the selection, evaluation, training and supervision of individuals employed as police officers.  This includes when; under what circumstances; and in what manner an officer is permitted to use force against an individual including the use of a firearm. This also involves the proper procedure for the conducting of traffic stops and to ensure that racial profiling is not used in this process.

17.     The Borough of Homestead Police Department is responsible for setting policy,

procedures and directives for the operation of its Police Officers and to ensure that policies, procedures and directives established are enforced for the exercise of their police duties; and, are responsible for the development and implementation of policies and procedures concerning the selection, evaluation, training and supervision of individuals employed as police officers. This includes when; under what circumstances; and in what manner an officer is permitted to use force against an individual including the use of a firearm. This also involves the proper procedure for the conducting of traffic stops and to ensure that racial profiling is not used in this process.

18.     The City of Pittsburgh Bureau of Police has intact a series of policies and procedures that govern the actions of police officers during the discharge of their duties. While there are a variety of "Orders" which dictate the actions of officers, specifically, Order Number 12-6 addresses the Use of Force by City of Pittsburgh Police Officers, Order Number 12-7 addresses the Discharge of Firearms by City of Pittsburgh Police Officers. All police officers who are employed as City of Pittsburgh Police Officers are expected to follow the mandates promulgated within each and every Order.

19.     Defendants Strang and Ilgenfritz are officers of the Borough of Homestead Police Department. In such capacity, Defendants Strang and Ilgenfritz are charged with the enforcement of the laws of the Commonwealth of Pennsylvania, in a fair, just and equitable manner consistent with the rights afforded all individuals by the Constitutions of the United States of America and the Commonwealth of Pennsylvania; and, were acting, at all times relevant hereto, under color of law and color of their authority as police officers of the Borough of Homestead.

20.     Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko are officers of the City of Pittsburgh Police Department. In such capacity, Defendants Schweitzer,

Matakovich, Kennedy, Gorecki, and Boyko are charged with the enforcement of the laws of the Commonwealth of Pennsylvania, in a fair, just and equitable manner consistent with the rights afforded all individuals by the Constitutions of the United States of America and the Commonwealth of Pennsylvania; and, were acting, at all times relevant hereto, under color of law and color of their authority as police officers of the City of Pittsburgh.

21.     The Borough of Homestead Police Department should have had established or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction of any Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated; when individuals are to be taken into custody and or arrested; when traffic stops are to be effectuated; how traffic stops should be conducted, and, when; under what circumstances; and in what manner on officer is permitted to use force against an individual including the use of a firearm. Additionally, policies, procedure and/or guidelines exist or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner. Also, to ensure that racial profiling is not used as a basis for police exercising of authority.

22.     The Borough of Homestead Police Department should have had established or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction of any Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated; when individuals are to be taken into custody and or arrested; when traffic stops are to be effectuated; how traffic stops should be conducted, and, when; under what circumstances; and in what manner on officer is

permitted to use force against an individual including the use of a firearm. Additionally, policies, procedure and/or guidelines exist or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner. Also, to ensure that racial profiling is not used as a basis for police exercising of authority.

23.     The City of Pittsburgh Police Department should have ensured that the established policies and procedures that are outlined in the Pittsburgh Bureau of Police General Order were being followed. Specifically, the City of Pittsburgh Police Department should have ensured that Order Number 12-6- Use of Force by City of Pittsburgh Police Officers, Order Number 12-7 - Discharge of Firearms by City of Pittsburgh Police Officers, among others, were being followed by all individuals employed as Police Officers within the City of Pittsburgh. Alternatively, if such Orders were not being followed by Officers during the exercise of their official duties, appropriate disciplinary action should have been taken by the City of Pittsburgh against the specific officers found to be in noncompliance.  The failure by the City of Pittsburgh Police Department to ensure that the established policies and procedures found in the Pittsburgh Bureau of Police Order were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the City of Pittsburgh Police Department to thwart the custom or practice of officers' noncompliance of the noted Order with the noted policies and procedures, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Pittsburgh, such as the Plaintiff, and other individuals referenced herein.

24.     On or about January 13, 2013, at approximately 1:38 a.m., the Plaintiff was

operating a motor vehicle in a direction towards the Borough of West Homestead and the City of Pittsburgh on 8th Avenue at its intersection with Hays street in the Borough of Homestead, Pennsylvania.

25.   Officer Strang of the Homestead Police Department allegedly viewed the Plaintiff proceed against a red light at the aforementioned intersection.  As a result, Strang positioned his police cruiser behind the Plaintiff's vehicle.  It has been alleged that the Defendant failed to pull his vehicle over when Officer Strang attempted to initiate a traffic stop.

26.   Officer Strang began to pursue the vehicle at speeds between thirty-five (35) to forty-five (45) miles per hour.

27.   Eventually, Officer Ilgenfritz of the Homestead Police Department joined in the pursuit as the lead vehicle.

28.   During the course of the slow moving pursuit, the vehicle operated by the Plaintiff traveled out of the Borough of Homestead and into the City of Pittsburgh via Pennsylvania State Route 837.

29.   Sergeant James Perry (hereinafter "Sgt. Perry") of the Zone 3 section of the City of Pittsburgh Police Department, which covers the South Side area of Pittsburgh, had been monitoring the communications on police radio among various City of Pittsburgh Police Officers, off-duty City of Pittsburgh Police Officers, and 911 communications referring to the pursuit of Plaintiff led by Strang and Ilgenfritz, of the Borough of Homestead Police Department.

30.   When Sgt. Perry recognized that Strang and Ilgenfritz were approaching the City of Pittsburgh, he gave on order to terminate the pursuit on at least five separate occasions. This order was ignored by Strang and Ilgenfritz.

31.   Despite the direct order to terminate the pursuit from a superior Officer, Strang

and Ilgenfritz continued to pursue the Plaintiff down East Carson Street, in the South Side area of the City of Pittsburgh.  City of Pittsburgh Officers, who were also aware of the cease pursuit order, ignored the same and instead, deployed spike strips near the 2400 block of East Carson Street.

32.     Sergeant Matakovich was working an off-duty detail near the 1500 block of East Carson Street when he heard of the slow moving pursuit over the police radio.  He positioned himself near Officer Kennedy who was working an off-duty detail near the 1600 block of East Carson.

33.     Officer Schweitzer, who was near 1400 block of East Carson, and the first to fire his weapon at the vehicle operated by the Plaintiff, discharged his firearm three to four times.

34.     As he saw the vehicle operated by the Plaintiff approaching, Matakovich fired into the vehicle four times and Kennedy fired his service weapon once.

35.     Officer Gorecki, who was near the 1400 block of East Carson, viewed the vehicle operated by the Plaintiff rear ended another vehicle.  Officer Gorecki then fired two shots at the Plaintiff from a distance of five to six feet away after the vehicle had already crashed.

36.     The vehicle operated by the Plaintiff finally came to a final resting place at or near the 1300 block of East Carson Street.

37.     Despite the vehicle had come to a final rest, Officer Boyko and other Defendant officers continued to shoot into the vehicle.

38.      At the time Officers Schweitzer, Matakovich, Gorecki, Kennedy, and Boyko shot at the Plaintiff's vehicle with their firearms, Donald Burris, Jr. did not pose an immediate threat to the safety of the officers or others.

39.     The actions of Officers Schweitzer, Matakovich, Gorecki, Kennedy, and Boyko

constituted an excessive use of force against the Plaintiff, Donald Burris, Jr., which deprived him of his rights under the 14th and 4th Amendments of the United States Constitution and was the proximate and direct cause of the injuries, complained herein.

40.     At the time of the events and occurrences set forth herein, the police department of the City of Pittsburgh had a policy, or General Order, in effect which prohibited police officers from discharging their firearms at a moving vehicle unless the occupants were using deadly force against the officer or another person.

41.     At the time of the events and occurrences set forth herein, Strang and Ilgenfritz wrongfully, willfully, and wantonly maintained their pursuit in disregard of orders given them to terminate the pursuit, by a superior officer, and failed to adhere to Homestead Borough police policy and procedure regarding pursuits.

42.     When he was shot, Donald Burris, Jr. experienced intense pain throughout his body; and, the vehicle he was operating careened into a parked vehicle. Due to the gunshot wounds, the Plaintiff presented at the Emergency Room in critical condition.

43.     As a result of being shot three times, Donald Burris, Jr. was required to be hospitalized, required surgical intervention; and has suffered physical, emotional, and physiological injuries.

44.     As a direct and proximate result of the actions of the Defendants, Donald Burris, Jr.  has been subjected to and may hereafter be subject to great pain, suffering and inconvenience; he was required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for his injuries; he may have sustained an aggravation of pre-existing injuries or conditions; he has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently

impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression and nervousness. He has suffered scarring and disfigurement. He has incurred and may hereafter incur expenditures for medical care, nursing, drugs, appliances and kindred expenditures.

45.     The presence of non-minor physical injuries like those suffered by Donald Burris, Jr., however, is certainly relevant in evaluating the degree of the <u>Fourth Amendment</u> intrusion, which has occurred

46.     Hand guns fall into the category of lethal, deadly force. All force--lethal and non-lethal--must be justified by the need for the specific level of force employed. The nature of the specific force employed must be evaluated in a specific factual situation where the force is employed.

47.     To prevail on a Fourth Amendment excessive-force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable.

48.     A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. Rather, the objective facts must establish that the suspect poses an immediate threat to the officer or a member of the public.

49.     While the commission of a misdemeanor or summary/traffic  offense is not to be taken lightly, it mitigates against finding the force used to effect an arrest reasonable where the suspect was nonviolent and posed no or an insubstantial threat to the safety of the officers or others.

50.     Based upon the totality of the circumstances, the use of deadly, lethal force by

Officers Schweitzer, Matakovich, Gorecki, Kennedy, and Boyko shooting the Plaintiff, Donald Burris, Jr., numerous times was not appropriate or reasonable in nature and constituted an excessive use of force against him in violation of the rights and immunities guaranteed to Donald Burris, Jr. by the Fourteenth and Fourth Amendments of the United States Constitution.

51.     The City of Pittsburgh Bureau of Police failed to have established  and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction any  Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated;  when individuals are to be taken into custody and or arrested; when and the method by which traffic stops are to be effectuated and conducted, and, when; under what circumstances; and in what manner an officer is permitted to use force against an individual including the use of a firearm and other means of force. Additionally, it failed to enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

52.     The City of Pittsburgh Bureau of Police should have ensured that the established policies and procedures that are outlined in the Pittsburgh Bureau of Police General Order were being followed. Specifically, the City of Pittsburgh Police Department should have ensured that Order Number 12-6- Use of Force by City of Pittsburgh Police Officers, Order Number 12-7 - Discharge of Firearms by City of Pittsburgh Police Officers, among others, were being followed by all individuals employed as Police Officers within the City of Pittsburgh. Alternatively, if such Orders were not being followed by Officers during the exercise of their official duties, appropriate disciplinary action should have been taken by the City of Pittsburgh against the

specific officers found to be in noncompliance.  The failure by the City of Pittsburgh Bureau of Police to ensure that the established policies and procedures found in the Pittsburgh Bureau of Police Order were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the City of Pittsburgh Police Department to thwart the custom or practice of officers' noncompliance of the Order, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Pittsburgh, such as the Plaintiff, and other individuals referenced herein.

53.     The Borough of Homestead Police Department should have ensured that the established policies and procedures that govern the commencement and termination of traffic pursuits were followed.  Alternatively, if such policies and procedures were not being followed by Officers during the exercise of their official duties, appropriate disciplinary action should have been taken by the Borough of Homestead against the specific officers found to be in noncompliance.  The failure by the Bureau of Homestead to ensure that the established policies and procedures found in the were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the Borough of Homestead to thwart the custom or practice of officers' noncompliance of the policies, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Pittsburgh, such as the Plaintiff.

54.     The City of Pittsburgh failed to have established  and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction any Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated;  when individuals are to be taken into custody and or

arrested; when and the method by which traffic stops are to be effectuated and conducted, and, when; under what circumstances; and in what manner an officer is permitted to use force against an individual including the use of a firearm and other means of force. Additionally, it failed to enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

55.    The Borough of Homestead failed to have established   and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction any  Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated;  when individuals are to be taken into custody and or arrested; when and the method by which traffic stops are to be effectuated and conducted, and, when; under what circumstances; and in what manner an officer is permitted pursue a vehicle for summary traffic offenses. Additionally, it failed to enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

56.    The City of Pittsburgh Police Department should have ensured that the established policies and procedures that are outlined in the Pittsburgh Bureau of Police General Order were being followed. Specifically, the City of Pittsburgh Police Department should have ensured that Order Number 12-6- Use of Force by City of Pittsburgh Police Officers, Order Number 12-7 - Discharge of Firearms by City of Pittsburgh Police Officers, among others, were

being followed by all individuals employed as Police Officers within the City of Pittsburgh. Alternatively, if such Orders were not being followed by Officers during the exercise of their official duties, appropriate disciplinary action should have been taken by the City of Pittsburgh against the specific officers found to be in noncompliance.  The failure by the City of Pittsburgh Police Department to ensure that the established policies and procedures found in the Pittsburgh Bureau of Police Order were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the City of Pittsburgh Police Department to thwart the custom or practice of officers' noncompliance of the Order, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Pittsburgh, such as the Plaintiff, and other individuals referenced herein.

57.     The errors, omissions and failures of the City of Pittsburgh Bureau of Police were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr.  in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

58.     The errors, omissions and failures of the Borough of Homestead Police Department were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr.  in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

59.     The errors, omissions and failures of the City of Pittsburgh were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth

and Fourth Amendments of the United States Constitution to have occurred.

60.     The errors, omissions and failures of the Borough of Homestead were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr.  in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

61.     The errors, omissions and failures of the Nathan Harper in his official capacity were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

62.     The errors, omissions and failures of the Jeffrey DeSimone in his official capacity were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

63.     The errors, omissions and failures of James Strang were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

64.     The errors, omissions and failures of James Ilgenfritz were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

65.     The errors, omissions and failures of Louis Schweitzer were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

66.     The errors, omissions and failures of Stephen Matakovich were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

67.     The errors, omissions and failures of Calvin Kennedy were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

68.     The errors, omissions and failures of Thomas Gorecki were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

69.     The errors, omissions and failures of Igor Boyko were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Donald Burris, Jr. in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

70.     At all times relevant hereto, the named Defendants and, were acting under color of state law.

71.     At all times relevant whereto, the Defendants were acting directly or through their

agents, servants and employees.

FIRST CAUSE OF ACTION

DEPREVATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH

AMENDMENT AND 42 USC §1983

DONALD BURRIS, JR. v. JAMES STRANG

72.     Donald Burris, Jr. alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-71 of the within Complaint as if more fully set forth herein.

73.     Defendant Strang disregarded orders to terminate the pursuit and established Homestead Borough police policy and procedure regarding pursuits and instead, continued the pursuit of the vehicle driven by the Plaintiff at times when they knew the danger of injury and life threatening harm to the Plaintiff and his passenger.  Defendant knew or should have known the danger of injury and life threatening harm to the innocent people in a highly populated area of the City of Pittsburgh during a time where the streets and sidewalks were congested with pedestrians and vehicles.

74.     Alternatively, even if Defendant Strang did not receive direct orders to terminate the pursuit of the Plaintiff, based upon his training and experience, he knew or should have known to cease the pursuit upon entering the highly populated area of the South Side because of the reasonably foreseeable risk of harm or serious bodily injury to the multitude of innocent persons present, as well as the Plaintiff and his passenger.

75.     Defendant Strang's willful, wanton, and wrongful disregard of orders to terminate the pursuit of the Plaintiff, and his intentional decision to maintain the pursuit of the Plaintiff approximately two miles away from the location where the Pittsburgh Police Officers discharged their firearms one or more times into the vehicle and directly at the Plaintiff Burris, Jr.,

evidenced the Defendant's disregard to the risk of harm to the Plaintiff which violated the rights guaranteed to him by the Fourteenth Amendment to the United States Constitution.

76.    As a result of the willful, wrongful, and wanton conduct of Defendant Strang committed under color of law via the authority granted to him as Borough of Homestead police officer, the Plaintiff suffered serious bodily injury and was deprived of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution which was in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

77.    As a result of Defendant Strang's conduct, Plaintiff suffered physical, emotional, and psychological injuries directly attributed to the Defendant's conduct.

78.    Plaintiff has sustained special damages including medical expenses past and present and will continue to sustain expenses in the future.  Plaintiff has suffered loss of his general good health and well being.

79.    The conduct of Defendant Strang was extreme and outrageous and shocks the conscience of people of reasonable sensibilities.

80.    Defendant Strang's acts were intentional, wanton, malicious and oppressive entitling the Plaintiff to punitive damages.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against Defendant Strang, as follows:

      a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

      b.    punitive damages;

      c.    prejudgment and post judgment interest;

      d.    the costs incurred in the prosecution of this matter;

e.      reasonable counsel fees; and,

f.      such other and further relief as the Court deems just and appropriate.

SECOND CAUSE OF ACTION

DEPREVATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH

AMENDMENT AND 42 USC §1983

DONALD BURRIS, JR. v. JAMES ILGENFRITZ

81.     Donald Burris, Jr. alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-80 of the within Complaint as if more fully set forth herein.

82.     Defendant Ilgenfritz disregarded orders to terminate the pursuit and established Homestead Borough police policy and procedure regarding pursuits and instead, continued the pursuit of the vehicle driven by the Plaintiff at times when they knew the danger of injury and life threatening harm to the Plaintiff and his passenger.  Defendant knew or should have known the danger of injury and life threatening harm to the innocent people in a highly populated area of the City of Pittsburgh during a time where the streets and sidewalks were congested with pedestrians and vehicles.

83.     Alternatively, even if Defendant Ilgenfritz did not receive direct orders to terminate the pursuit of the Plaintiff, based upon his training and experience, he knew or should have known to cease the pursuit upon entering the highly populated area of the South Side because of the reasonably foreseeable risk of harm or serious bodily injury to the multitude of innocent persons present, as well as the Plaintiff and his passenger.

84.     Defendant Ilgenfritz's willful, wanton, and wrongful disregard of orders to terminate the pursuit of the Plaintiff, and his intentional decision to maintain the pursuit of the

Plaintiff approximately two miles away from the location where the Pittsburgh Police Officers discharged their firearms one or more times into the vehicle and directly at the Plaintiff Burris, Jr., evidenced the Defendant's disregard to the risk of harm to the Plaintiff which violated the rights guaranteed to him by the Fourteenth Amendment to the United States Constitution.

85.     As a result of the willful, wrongful, and wanton conduct of Defendant Ilgenfritz committed under color of law via the authority granted to him as a Borough of Homestead police officer, the Plaintiff suffered serious bodily injury and was deprived of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution which was in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

86.     As a result of Defendant Ilgenfritz's conduct, Plaintiff suffered physical, emotional, and psychological injuries directly attributed to the Defendant's conduct.

87.     Plaintiff has sustained special damages including medical expenses past and present and will continue to sustain expenses in the future.  Plaintiff has suffered loss of his general good health and well being.

88.     The conduct of Defendant Ilgenfritz was extreme and outrageous and shocks the conscience of people of reasonable sensibilities.

89.     Defendant Ilgenfritz's acts were intentional, wanton, malicious and oppressive entitling the Plaintiff to punitive damages.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against the Defendant Ilgenfritz, as follows:

> a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;
>
> b.     punitive damages;

c.      prejudgment and post judgment interest;

d.      the costs incurred in the prosecution of this matter;

e.      reasonable counsel fees; and,

f.      such other and further relief as the Court deems just and

appropriate.

THIRD CAUSE OF ACTION

DEPRIVATION OF SUBSTANTIVE DUE PROCEESS UNDER THE FOURTEENTH

AMENDMENT AND 42 U.S.C. §1983

DONALD BURRIS, JR.

V.

THE BOROUGH OF HOMESTEAD and JEFFREY DeSIMONE

90.      Donald Burris, Jr. alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-89 of the within Complaint as if more fully set forth herein.

91.      At all times material hereto, the power, authority, and responsibility of the promulgation of adequate policies and procedures of the Borough of Homestead bested in the Chief of Police, Defendant Jeffrey DeSimone, as well as the enforcement and discipline for violation of said policies.

92.      Defendant Borough of Homestead and Defendant Jeffrey DeSimone as Chief of Police failed to promulgate adequate policies and procedures to safeguard innocent people against the objectively unreasonable continuation of a motor vehicle pursuits by officers of their police department which could lead to the deprivation of rights guaranteed to individuals by the Fourteenth Amendment to the Constitution of the United States of America.

93.      Alternatively,   Defendant   Borough   of   Homestead   and   Defendant   Jeffrey

DeSimone as Chief of Police failed to adequately train or supervise or discipline officers in reasonable and adequate policies and procedures to prevent the unreasonable continuation of motor vehicle pursuits by officers of their police department and safeguard innocent people against deprivation of rights guaranteed to individuals by the Fourteenth Amendment to the Constitution of the United States of America.

94.     The Defendants failed to adequately train, supervise and/or discipline its employees or agents in the performance of their duties, specifically, adherence to policies and procedures regarding vehicular chases and/or undertook actions which were improper or illegal and demonstrated indifference to the constitutional rights of individuals, such as Donald Burris, Jr.

95.     The Defendants had policies and/or customs in place and/or failed to insure that policies, procedures and protocols, specifically, regarding adherence to policies and procedures regarding vehicular chases which existed were properly enforced and personnel supervised in the performance of their duties that enabled their employees, servants or agents to act with deliberate indifference to the constitutional rights of individuals, such as Donald Burris, Jr.

96.     The Defendants failed to develop and implement policies procedures and protocols that then enabled their employees and agents to act with deliberate indifference to the constitutional rights of individuals, such as Donald Burris, Jr.

97.     As a result of Defendants' conduct, Plaintiff suffered physical, emotional, and psychological injuries all of which occurred by reason of the aforementioned conduct of the Defendant, borough of Homestead.

98.     As a result of the Defendants' joint and several conduct, Plaintiff has sustained special damages including medical expenses past and present, and will continue to sustain

expenses in the future.  Plaintiff has suffered loss of his general good health and vitality.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

a.      compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

b.      punitive damages;

c.      prejudgment and post judgment interest;

d.      the costs incurred in the prosecution of this matter;

e.      reasonable counsel fees; and,

f.      such other and further relief as the Court deems just and appropriate.

## FOURTH CAUSE OF ACTION

USE OF EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT AND 42 USC § 1983

DONALD BURRIS, JR.

V.

LOUIS SCHWEITZER, STEPHEN MATAKOVICH, CALVIN KENNEDY, THOMAS GORECKI, AND IGOR BOYKO

99.      Plaintiff incorporates Paragraphs one through ninety-eight (1-98) of this Complaint by reference hereto.

100.      Defendants' actions errors and omissions, as more fully described in the factual section of the within complaint, constituted violations of Donald Burris, Jr.'s rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States

Constitution. Said rights, privileges and immunities include the right to body integrity and the right to be free from the use of excessive force.

101.    The intentional firing of bullets into the front seat compartment of the vehicle operated by the Plaintiff by Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko was conduct which amounted to an infraction upon the Plaintiff's right to liberty and constituted excessive force through such means intentionally applied.

102.    The acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to Donald Burris, Jr. by the Fourth and Fourteenth Amendments to the United States Constitution.

103.    The intentional firing of bullets into the front seat compartment of the vehicle and directly at the Plaintiff, Donald Burris, Jr. by Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko were clearly excessive and amounted to an attempt to imperil the life of Donald Burris, Jr. and that conduct shocks the conscience and has no justification in law and fact.

104.    The conduct of the Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko committed under color of law or according to custom and usage under each of the Defendants' authority as police officers for the City of Pittsburgh constituted intentional, unlawful, and illegal excessive and deadly force.  The Defendants' acts caused Plaintiff to suffer serious bodily harm and deprived him of his right to be free from excessive force guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution, all of which were in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

      a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

      b.    punitive damages;

      c.    prejudgment and post judgment interest;

      d.    the costs incurred in the prosecution of this matter;

      e.    reasonable counsel fees; and,

      f.    such other and further relief as the Court deems just and appropriate.

FIFTH CAUSE OF ACTION

USE OF EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT AND 42 USC § 1983

DONALD BURRIS, JR.

V.

CITY OF PITTSBURGH and NATHAN HARPER

105.    Plaintiff incorporates paragraphs one through one hundred four (1-104) of this Complaint by reference hereto.

106.    At all times material hereto, the power, authority, and responsibility for the implementation of adequate policies and procedures of the Pittsburgh Police Department was vested in the Chief of Police, Nathan Harper, as well as the enforcement and discipline for violation of said policies.

107.    Defendant, City of Pittsburgh, through its agent, servant, and employee, Nathan Harper, failed to implement adequate policies and procedures to safeguard innocent individuals

against excessive use of force guaranteed to them by the Fourth and Fourteenth Amendments to the United States Constitution as to the discharge of firearms in situations involving vehicular pursuits that could be encountered by officers of the City of Pittsburgh Police Department.

108.    Alternatively, Defendant City of Pittsburgh through its agent, servant, and employee Nathan Harper, failed to adequately train, supervise, or discipline its police officers in reasonable and adequate policies and procedures to safeguard innocent individuals against excessive use of force guaranteed to them by the Fourth and Fourteenth Amendments to the United States Constitution as to the discharge of firearms in situations involving vehicular pursuits that could be encountered by officers of the City of Pittsburgh Police Department.

109.    The City of Pittsburgh Police Department has established policies and procedures to act as a safeguard against constitutional infractions and restraints upon officers using excessive and/or deadly force.  In section 5.0 of the General Order of the Pittsburgh Bureau of Police, it maintains that:

> A "peace officer," (law enforcement officer) … shall only
> Use deadly force when necessary and justified to affect
> Lawful objectives in conformance to the Pennsylvania
> Crimes Code.

110.    Furthermore, the Order provides the proper protocol of when an officer should rightfully discharge his firearm in Section 4.4 which provides:

> An officer shall not discharge his or her firearm at a moving
> Vehicle or the occupants of a moving vehicle unless the occupants
> Are using deadly physical force against the officer or another person
> Present by means other than the vehicle.

111.    Within this action, the conduct of the Defendant Officers were violative of the previously enumerated policies and procedures promulgated in the Pittsburgh Bureau of Police's General Order and the rights and privileges guaranteed to the Plaintiff by the Constitution of the

United States and the Constitution of the state of Pennsylvania.  Said rights, privileges and immunities include the right to body integrity; the right to be free from the use of excessive force; the right to be free from unreasonable seizures and searches.

112.   The acts of the Defendants were done with the purpose and intent of depriving Donald Burris, Jr. of his rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

113.   The said conduct of Defendants Harper and the City of Pittsburgh manifested itself as a deliberate indifference to the rights of the general public and such innocent persons as the Plaintiff, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

114.   As a result of the conduct of Defendants Harper and the City of Pittsburgh, Plaintiff suffered physical, emotional, and psychological injuries, all of which occurred by reason of the aforementioned conduct of the Defendant, City of Pittsburgh.

115.   As a result of the conduct of Defendants Harper and the City of Pittsburgh, Plaintiff has sustained special damages including medical expenses past and present and will continue to sustain expenses in the future.  Plaintiff has suffered loss of his general good health and vitality.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

    a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

    b.    punitive damages;

    c.    prejudgment and post judgment interest;

d.      the costs incurred in the prosecution of this matter;

e.      reasonable counsel fees; and,

f.      such other and further relief as the Court deems just and

appropriate.

SIXTH CAUSE OF ACTION

DEPRIVATION OF SUBSTANTIVE DUE PROCESS

UNDER THE FOURTEENTH AMENDMENT AND 42 U.S.C. §1983

DONALD BURRIS, JR.

V.

LOUIS SCHWEITZER, STEPHEN MATAKOVICH, CALVIN KENNEDY, THOMAS

GORECKI, AND IGOR BOYKO

116.    Plaintiff incorporates Paragraphs one through one hundred fifteen (1-115) of this

Complaint by reference hereto.

117.    The intentional act of Defendants Schweitzer, Matakovich, Kennedy, Gorecki,

and Boyko to fire their weapons into the front seat compartment of the vehicle in which the

Plaintiff was operating was done with the knowledge that danger or injury or death was

imminent and said acts were without justification in law or in fact and amounted to an intentional

use of deadly force against the Plaintiff, Donald Burris, Jr. in violation of his Fourteenth

Amendment Rights.

118.    Defendants' actions errors and omissions, as more fully described in the factual

section of the within complaint, constituted violations of Donald Burris, Jr.'s rights, privileges

and immunities, as secured by the Fourth and Fourteenth Amendments to the United States

Constitution. Said rights, privileges and immunities include the right to body integrity; the right

to be free from the use of excessive force; the right to be free from unreasonable seizures and searches.

119.     As a result of the willful, wrongful, and wanton conduct of the named Defendants committed under color of law via the authority granted to him as City of Pittsburgh police officers, the Plaintiff suffered serious bodily injury and was deprived of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution which was in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

120.     The acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to Donald Burris, Jr. by the Fourteenth Amendment to the United States Constitution.

121.     The intentional firing into the front seat compartment by the Defendants was done with the purpose and intent of depriving Donald Burris, Jr. of his rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

122.     The acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to Donald Burris, Jr. by the Fourth and Fourteenth Amendments to the United States Constitution.

123.     As a result of Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko's conduct, Plaintiff suffered physical, emotional, and psychological injuries directly attributed to the Defendants' conduct.

124.     Plaintiff has sustained special damages including medical expenses past and present and will continue to sustain expenses in the future.  Plaintiff has suffered loss of his

general good health and well being.

125.    The conduct of Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko was extreme and outrageous and shocks the conscience of people of reasonable sensibilities.

126.    Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko's acts were intentional, wanton, malicious and oppressive entitling the Plaintiff to punitive damages.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

b.     punitive damages;

c.     prejudgment and post judgment interest;

d.     the costs incurred in the prosecution of this matter;

e.     reasonable counsel fees; and,

f.     such other and further relief as the Court deems just and appropriate.

SEVENTH CAUSE OF ACTION

DEPRIVATION OF SUBSTANTIVE DUE PROCESS

UNDER THE FOURTEENTH AMENDMENT AND 42 U.S.C. §1983

DONALD BURRIS, JR.

V.

CITY OF PITTSBURGH and NATHAN HARPER

127.    Plaintiff incorporates paragraphs one through one hundred twenty six (1-126) of

this Complaint by reference hereto.

128.    At all times material hereto, the power, authority, and responsibility for the implementation of adequate policies and procedures of the Pittsburgh Police Department was vested in the Chief of Police, Nathan Harper, as well as the enforcement and discipline for violation of said policies.

129.    Defendant, City of Pittsburgh, through its agent, servant, and employee, Nathan Harper, failed to implement adequate policies and procedures to safeguard innocent individuals against excessive use of force guaranteed to them by the Fourth and Fourteenth Amendments to the United States Constitution as to the discharge of firearms in situations involving vehicular pursuits that could be encountered by officers of the City of Pittsburgh Police Department.

130.    Alternatively, Defendant, City of Pittsburgh, through its agent, servant, and employee, Nathan Harper, failed to adequately train, supervise, or discipline its police officers in reasonable and adequate policies and procedures to safeguard innocent individuals against excessive use of force guaranteed to them by the Fourth and Fourteenth Amendments to the United States Constitution as to the discharge of firearms in situations involving vehicular pursuits that could be encountered by officers of the City of Pittsburgh Police Department.

131.    The City of Pittsburgh Police Department has established policies and procedures to act as a safeguard against constitutional infractions and restraints upon officers using excessive and/or deadly force.  In section 5.0 of the General Order of the Pittsburgh Bureau of Police, it maintains that:

> A "peace officer," (law enforcement officer) … shall only
> Use deadly force when necessary and justified to affect
> Lawful objectives in conformance to the Pennsylvania
> Crimes Code.

132.    Furthermore, the Order provides the proper protocol of when an officer should rightfully discharge his firearm in Section 4.4 which provides:

> An officer shall not discharge his or her firearm at a moving
> Vehicle or the occupants of a moving vehicle unless the occupants
> Are using deadly physical force against the officer or another person
> Present by means other than the vehicle.

133.    Within this action, the conduct of the Defendant Officers were violative of the previously enumerated policies and procedures promulgated in the Pittsburgh Bureau of Police's General Order and the rights and privileges guaranteed to the Plaintiff by the Constitution of the United States and the Constitution of the state of Pennsylvania.  Said rights, privileges and immunities include the right to body integrity; the right to be free from the use of excessive force; the right to be free from unreasonable seizures and searches.

134.    The acts of the Defendants were systematic and continuous in nature in that following the incident, all Officers, including the shooters, were returned to regular full-time duty.  This decision was made by the named Defendants without first undertaking a full investigation of the incident which would of course include questioning the Plaintiff or questioning the Plaintiff's counsel.

135.    Moreover, the instant action is unfortunately not an isolated instance.  One only need to travel to a different floor in the Federal Courthouse for the Western District of Pennsylvania to be faced with another example of the City of Pittsburgh Police Department's blatant and continuous disregard for policy, particularly in the context of excessive and/or deadly force.  The beating of Jordan Miles led to subsequent civil litigation that has been instituted in its aftermath.  In that case, three Zone Five police officers brutally beat Jordan Miles when they mistook a bottle of soda for a firearm. Recently, a jury returned a verdict in favor of Mr. Miles.

Furthermore, the matter of Leon Ford, an unarmed teenager who was shot five times and paralyzed is also currently pending before the court.

136.    The failure by the City of Pittsburgh Police Department to ensure that the established policies and procedures found in the Pittsburgh Bureau of Police Order were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the City of Pittsburgh Police Department to thwart the custom or practice of officers' noncompliance of the Order, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Pittsburgh, such as the Plaintiff, and other individuals referenced herein.

137.    The failure by the City of Pittsburgh to ensure that the established policies and procedures found in the Pittsburgh Bureau of Police Order were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the City of Pittsburgh Police Department to thwart the custom or practice of officers' noncompliance of the Order, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Pittsburgh, such as the Plaintiff, and other individuals referenced herein.

138.    The failure by Chief Harper to ensure that the established policies and procedures found in the Pittsburgh Bureau of Police Order were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the City of Pittsburgh Police Department to thwart the custom or practice of officers' noncompliance of the Order, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Pittsburgh, such as the Plaintiff, and other individuals referenced herein. The further failure to properly train the Pittsburgh City

of Police Officers in accordance with the Order, particularly in light of the blatant disregard and custom of ignoring the Policies found in the Order, constitutes a deliberate indifference to the constitutional rights of the Plaintiff, and others similarly situated.

139.    Thus, due to the pervasive and regular custom of ignoring police policies and procedures, it is clear that the acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and deliberate indifference to and disregard of the rights, immunities and privileges guaranteed to Donald Burris, Jr. by the Fourth and Fourteenth Amendments to the United States Constitution.

140.    The said conduct of Defendants Harper and the City of Pittsburgh manifested itself as a deliberate indifference to the rights of the general public and such innocent persons as the Plaintiff, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

141.    As a result of the conduct of Defendants Harper and the City of Pittsburgh, Plaintiff suffered physical, emotional, and psychological injuries, all of which occurred by reason of the aforementioned conduct of the Defendant, City of Pittsburgh.

142.    As a result of the conduct of Defendants Harper and the City of Pittsburgh, Plaintiff has sustained special damages including medical expenses past and present and will continue to sustain expenses in the future.  Plaintiff has suffered loss of his general good health and vitality.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

b.      punitive damages;

c.      prejudgment and post judgment interest;

d.      the costs incurred in the prosecution of this matter;

e.      reasonable counsel fees; and,

f.      such other and further relief as the Court deems just and

appropriate.


EIGHTH CAUSE OF ACTION-ASSAULT & BATTERY BASED ON PENDANT

JURISDICTION

DONALD BURRIS, JR.

V.

LOUIS SCHWEITZER, STEPHEN MATAKOVICH, CALVIN KENNEDY, THOMAS

GORECKI, AND IGOR BOYKO

143.    Plaintiff incorporates Paragraphs one through one hundred forty-two (1-142) of this Complaint by reference hereto.

144.    The Defendants shot Donald Burris, Jr. without justice or reasonable cause for the same constituting an unlawful assault and battery upon the person the Plaintiff.

145.    Defendants Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko put the Plaintiff in imminent fear of serious bodily injury by firing directly at the Plaintiff into the front seat compartment of the vehicle the Plaintiff was operating on the morning of January 13, 2013 and one or more bullets fired did result in a battery of the Plaintiff, Donald Burris, Jr.

146.    As a direct and proximate result of the Defendants' actions, Plaintiff suffered serious physical, emotional, and psychological injuries all of which occurred by reason of the

aforementioned conduct of the Defendants, Schweitzer, Matakovich, Kennedy, Gorecki, and Boyko.

147.    Plaintiff has sustained special damages including medical expenses past and present and will continue to sustain expenses in the future.  Plaintiff has suffered a loss of his general good health and vitality.

148.    Defendants' acts were intentional, wanton, willful and oppressive entitling Plaintiff to punitive damages.

WHEREFORE, Donald Burris, Jr. asks for the entrance of judgment against the Defendant as follows:

    a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

    b.    punitive damages;

    c.    prejudgment and post judgment interest;

    d.    the costs incurred in the prosecution of this matter;

    e.    reasonable counsel fees; and,

    f.    such other and further relief as the Court deems just and appropriate.

Respectfully submitted by:

/s/ *Monte J. Rabner*
Monte J. Rabner, Esquire
PA. ID No. 68251

Rabner Law Offices, P.C.
800 Law & Finance Building
429 Fourth Avenue
Pittsburgh, Pa 15219
(412) 765-2500/(412) 765-3900 Fax
monte@rabnerlaw.com